IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02405-MJW

JOSEPH EDWARD MARTINEZ,

Plaintiff,

v.

HARTFORD UNDERWRITERS INSURANCE COMPANY,

Defendant.

**ORDER ON
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: STATUTORY
DELAY (Docket No. 44)
and
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 45)**

**MICHAEL J. WATANABE
United States Magistrate Judge**

Now before the court for a report and recommendation are Plaintiff's Motion for Partial Summary Judgment Re: Statutory Delay (Docket No. 44) and Defendant's Motion for Summary Judgment (Docket No. 45). The court has carefully considered the subject motions, the responses (Docket Nos. 47 & 48), and the replies (Docket Nos. 51 & 52). In addition, the court has taken judicial notice of the court's file, and has considered the applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings of fact, conclusions of law, and orders.

**I. Summary of the Case**

Plaintiff Joseph Edward Martinez filed his Complaint (Docket No. 4) in Pueblo County District Court on July 24, 2012. This matter was removed to this court on

2

September 10, 2012, pursuant to 28 U.S.C. § 1332.  Pursuant to 28 U.S.C. § 636(c), an Order of Reference (Docket No. 15) was entered on January 11, 2013 assigning this case for final disposition to Magistrate Judge Watanabe.

This matter involves a homeowners insurance policy obtained by plaintiff and issued by defendant Hartford Underwriters Insurance Company.  The insured premises was burglarized on or about February 12, 2012.  The dispute between the parties involves compensation for the personal property losses incurred as a result of the burglary.  Plaintiff's Complaint (Docket No. 4) includes three claims against defendant: (1) breach of contract; (2) common law bad faith; and (3) statutory delay.  The following facts, material to the subject motions, are undisputed unless otherwise noted.

Plaintiff maintains a residence at 1712 Englewood Drive in the city of Pueblo, Colorado.  Docket No. 4, ¶ 1.  Plaintiff's adult son, Joseph Ryan Martinez ("Ryan Martinez"), resided at this at this house during the relevant time period.  See Docket No. 45-3, at 1-2.  Plaintiff was the named insured under a homeowners insurance policy, number 55 RBA 587276 (the "Policy"), issued by defendant.  Id., ¶ 3.  The Policy was in effect from June 5, 2011 to June 5, 2012.  Docket No. 45-4, at 1.

In relation to a reported burglary which occurred on or about February 12, 2012, plaintiff brought an insurance claim for the theft of property from his residence.  Docket No. 4, ¶ ¶ 5-7.  The items reported as stolen included a safe, guns, household appliances, and tools, including commercial-grade welding tools.  See Docket No. 45-2.  Accordingly to plaintiff, the total value for the personal property stolen was at least $54,024.08.  Docket No. 4, ¶ 10.  On March 30, 2012, defendant tendered a check for $24,527.85.  Id., at 9.  Plaintiff disputed this amount.  Id., at 10.

**II. Standard of Review**

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Bd. of Cnty. Comm'rs of the Cnty. of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried . . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp. 2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness supposed testimony is not suitable grist for the summary judgment mill." Adams v. Am. Guarantee & Liability Ins. Co., 233 F.3d 1242,

4

1246 (10th Cir. 2000) (internal citations and quotations omitted).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp. 2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Id. "Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Id. at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

### III. Defendant's Motion for Summary Judgment

In its Motion for Summary Judgment (Docket No. 45), defendant argues it is entitled to summary judgment as to all three of plaintiff's claims. Defendant maintains that due to their misrepresentations and omissions, plaintiff and Ryan Martinez (the "insureds") violated the Policy's Concealment or Fraud clause.

The Policy contains the following clause:

Q. Concealment or Fraud

We provide coverage to no "insureds" under this policy if, whether

before or after a loss, an "insured" has:

1.   Intentionally concealed or misrepresented any material fact or circumstances;

2.   Engaged in fraudulent conduct; or

3.   Made false statements;

relating to this insurance.

Docket No. 45-4, at 43 (the "fraud clause").

Such fraud clauses have been found to be enforceable by Colorado and Tenth Circuit courts. Significantly, violation of a fraud clause voids the entire claim, not just the portion is pertains to. See, e.g., Am. Diver's Supply & Manuf. Corp. v. Boltz, 482 F.2d 795, 798 (10th Cir. 1973) ("The penalty for attempted fraud in an insurance case where a fraud clause exists . . . is not simply forfeiture of the excess or inflated recovery amount but the voiding of all actual loss benefits as well."); Northwestern Nat. Ins. Co. v. Barnhart, 713 P.2d 1360 (Colo. App. 1985) (affirming the trial court's directed verdict allowing the insurer to recover the entire amount paid, where the fraud clause was violated as a result of the insured admitting he "padded" his insurance claim).

Unlike common law fraud, proof of detrimental reliance is not required on the part of the insurer. See Boltz, 482 F.2d at 796-98; Barnhart, 713 P.2d at 1361-62 (quoting and adopting the court's holding in Boltz). Rather, the insurer need only show that the misrepresentations or omissions were "material." "[T]he subject of the misrepresentation *need not ultimately prove to be significant* to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time." Wagnon v. State Farm Fire & Casualty Co., 146 F.3d 764, 768 (10th Cir. 1998)

6

(emphasis added). Accordingly, a misrepresentation or omission is "material" whenever "a reasonable insurance company, in deciding its course of action, would attach importance" to the matter. Id. at 768-69. Furthermore, a false statement need not be made under oath to be considered "material." Boltz, 482 F.2d at 798.

Second, intent to deceive on the part of the insured may be implied so long as the misrepresentations or omissions were made knowingly and deliberately. See Wagnon, 146 F.3d at 771. "This is true even if the misrepresentations were made for a purpose other than defrauding the insurer." Id.

Here, defendant argues that the undisputed facts demonstrate that the insureds made material, intentional misrepresentations and intentionally concealed material information. Accordingly, defendant argues plaintiff violated the Policy's fraud clause, and as such, summary judgment should be granted in favor of defendant.

The Policy sets out a special limit of $2,500 on property "used primarily for 'business' purposes." Docket No. 45-4, at 10. "Business" is defined as a "trade, profession or occupation engaged in on a full-time, part-time or occasional basis" or "[a]ny other activity engaged in for money or other compensation." Id., at 6-7. Defendant argues the undisputed facts demonstrate there was an extensive pattern of misstatements, misleading conduct, conflicting accounts, and refusals to provide requested information on the part of the insureds regarding the "business use" sub-limit. Defendant further argues that the undisputed facts demonstrate plaintiff made misstatements as to the identity of a possible suspect in the burglary. In response, plaintiff makes two distinct legal arguments regarding the "business use" sub-limit, and further argues that there are genuine disputes of material fact in relation to the fraud

7

clause.

## A. Timing of Defendant's Invocation of the Fraud Clause

First, plaintiff argues that the case law cited by defendant is distinguishable because those cases involved invocations of fraud clauses prior to the decision to issue a settlement check. This is opposed to the facts here, wherein defendant issued a settlement check in March 2012, then later invoked the fraud clause after conducting a further investigation. Plaintiff argues that a fraud clause cannot be properly invoked "when the claim has already been submitted, adjusted and paid but is then subject to dispute as to valuation of a specific category of the covered loss."

Plaintiff does not cite to any case law that supports this contention or explains why such a timing distinction is relevant. Indeed, available case law does not support plaintiff's position. For example, in Barnhart, the insurance company was entitled to recover the entire amount *already paid* after it was determined that the insured had "padded" his claim in violation of the applicable fraud clause. 713 P.2d at 1361; see also Am. Commerce Ins. Co. v. Harris, No. CIV-07-423-SPS, 2009 WL 3233738, at *4 (E.D. Okla. Sept. 25, 2009) (collecting cases finding that the insurer is entitled to recover money already paid after it is determined that the policy is void due to violation of a fraud clause). Accordingly, the court finds that defendant may properly invoke the fraud clause even if it did so after a settlement check was issued.

## B. Material Statements

Second, plaintiff argues that certain statements by the insureds, which are cited by defendant in support of its argument that the insureds violated the fraud clause, are

8

not material to the fraud clause issue.  Particularly, plaintiff points to statements regarding the identity of a potential suspect in the burglary and statements involving the insureds' prior theft history.  Plaintiff argues that because those statements do not implicate the "business use" sub-limit, they are not material and should not be considered by the court in connection to the fraud clause.

Plaintiff's argument is without merit.  While defendant focuses primarily on the "business use" sub-limit, there is nothing to prevent defendant from pointing to alleged misstatement and omissions unrelated to the "business use" sub-limit to support its argument that the insureds violated the fraud clause.  True, the fraud clause itself, and related case law, requires such facts to be material.  But they must be material in a general sense; nothing in the fraud clause limits its application to the "business use" sub-limit.  Accordingly, the court finds that statements regarding the identity of a potential suspect in the burglary and statements involving the insureds' prior theft history are not immaterial simply by virtue of the fact that they are unrelated to the "business use" sub-limit.

## C. Existence of Genuine Disputes as to Material Facts

Finally, as to the heart of the matter, plaintiff argues there are genuine disputes as to material facts regarding the insureds' violation of the fraud clause.  The court notes that in his response, plaintiff did not individually address each of defendant's numbered undisputed facts.  Rather, plaintiff incorporated his argument as to why certain facts were disputed into the body of his response.  Having considered defendant's Motion for Summary Judgment (Docket No. 45), plaintiff's response (Docket

9

No. 47), and defendant's reply (Docket No. 52), the court finds that the following facts are undisputed.[1]

Within one day after the burglary, defendant's representative, Abby Wiegerski, took a recorded statement from plaintiff. Plaintiff denied that any of the stolen property had been "used for business at all." Likewise, on April 24, 2012, plaintiff told defendant's investigator Mark Watling that the stolen welding equipment had been purchased for personal use, not business or commercial use.

During his deposition, plaintiff was asked by defendant's counsel whether it was "true that all of the equipment that was stolen in the burglary was purchased just for personal use and not any kind of business use." Plaintiff responded, "for my personal use." Furthermore, in response to an interrogatory, plaintiff denied that he or his son had engaged in any welding activity in exchange for any form of compensation during the preceding five years. Plaintiff represented that he had consistently told defendant during its investigation that neither he nor his family had ever been involved in any welding business. Plaintiff denied that Ryan Martinez had ever told plaintiff that plaintiff needed to purchase new equipment for a welding business.

On April 10, 2012, Ryan Martinez spoke to defendant's representative Nicole Hatch by telephone. Ryan Martinez stated, in effect, that the stolen property was for his business. Ryan Martinez was then told about the "business use" sub-limit. After learning of the sub-limit, Ryan Martinez stated that he meant the term "business" to

---

[1] The court will not cite to the record with regard to the undisputed facts; defendant's Motion for Summary Judgment (Docket No. 45) includes accurate citations to the record as to those facts.

10

mean "none of your business" or "I'll take care of my business."

On June 26, 2012, Mr. Watling conducted a recorded interview with Ryan Martinez. Initially, Ryan Martinez denied that any of the welding equipment had been purchased for use in a business and denied having had a welding business. Mr. Watling showed Ryan Martinez a public record showing that plaintiff had registered the trade name "Top of the Line Mobile Welding" on March 4, 2011. Ryan Martinez then conceded that he had approached plaintiff about starting a welding business.

Ryan Martinez stated that he had purchased a welding trailer and put "Top of the Line Mobile Welding" signage on his truck. The truck was kept parked in plaintiff's front yard. He further stated that plaintiff had known all along about the welding business. Indeed, plaintiff had lent Ryan Martinez money to purchase welding equipment for the business. Several items listed on plaintiff's handwritten inventory list were purchased by Ryan Martinez for the welding business using funds lent by plaintiff: item 31 - a "suitcase" style welder valued at $2,048, item 47 - a plasma cutter valued at $1,549, and item 59 - a Miller brand welding unit valued at $10,620. Ryan Martinez admitted that he performed at least one welding job for compensation, although the compensation was in the form of corn and chili peppers.

In May 2011, plaintiff reported a claim to defendant, separate from the claim in this matter, involving a welding cable stolen from the welding trailer parked in front of his house. For this earlier, separate claim, plaintiff gave a recorded statement to defendant's representative Jason Scafaria. Mr. Scafaria asked plaintiff if the welding machine and welding supplies were used for his welding business. Plaintiff replied that he did welding, and further stated that it was "[n]ot a full-time business, but it's just, you

11

know, when I need it, I, I do it.  And people call me to come and do some welding for them.  Well I'm able to do it because it's mobile."  During his deposition for this matter, plaintiff stated that when he used the term "business" with Mr. Scafaria, he was referring only to "business hobbies" or to "personal business" and not activity for financial gain.

In addition to the "business use" sub-limit, defendant also inquired into the identities of suspects in the February 2012 burglary.  During his April 24, 2012 recorded interview, plaintiff denied having any idea who might be responsible for the burglary.  However, during his later deposition for this matter, plaintiff admitted that he had known about a possible suspect, Paul Sierra, at the time of his April 24, 2012 interview.  Indeed, plaintiff had informed the Pueblo police department of Mr. Sierra's possible involvement on February 18, 2012, six days after the burglary occurred.

First, the court finds that the misrepresentations and omissions related to the "business use" sub-limit and the identity of a possible suspect are material.  A misrepresentation or omission is "material" whenever "a reasonable insurance company, in deciding its course of action, would attach importance" to the matter.  Wagnon, 146 F.3d at 768-69.  Plainly, a reasonable insurance company would attach importance to misrepresentations and omissions related to the "business use" sub-limit since it acts to cap the amount to be paid for property used for business purposes.  A reasonable insurance company would seek to properly categorize an insured's property in order to ensure that it is paying the correct amount for the insured's claim.  Clearly, paying out the correct amount for a given claim is of upmost importance to insurance companies.  A reasonable insurance company would also attached importance to the identity of a possible suspect in a burglary since the company could seek to exercise

subrogation rights against the responsible party.

In addition, matters of the "business use" sub-limit and the identity of the burglar are material regardless of whether the misrepresentations or omissions would have been dispositive of the claim, and regardless of whether defendant relied on the information or has been prejudiced.  See Boltz, 482 F.2d at 796-98.

Viewing the undisputed facts in a light most favorable to plaintiff, the court finds that no reasonable juror could find that plaintiff did not violate the fraud clause.  During his April 24, 2012 interview, plaintiff stated he had no idea who was responsible for the burglary.  However, plaintiff plainly admitted during his deposition, that at the time of his April 24, 2012 interview, he did in fact know the identity of a possible suspect.   Indeed, plaintiff reported the identity of the possible burglar to the police more than a month prior to the April 24, 2012 interview.  Plaintiff offers no evidence to dispute these facts. Although it is unclear and/or disputed as to why plaintiff misrepresented his knowledge of a possible suspect, the "why" is irrelevant since plaintiff knowingly and deliberating made the misrepresentation.  See Wagnon, 146 F.3d at 771 (stating the intent to deceive on the part of the insured may be implied so long as the misrepresentations were made knowingly and deliberately "even if the misrepresentations were made for a purpose other than defrauding the insurer").

Unlike the matter of the possible identity of a suspect, plaintiff has never expressly admitted to any kind of misrepresentation as to business use of the welding equipment.  Plaintiff insisted on multiple occasions that neither he nor Ryan Martinez were involved in a welding business.  However, the undisputed facts demonstrate the opposite is true.  Most significantly: Ryan Martinez admitted that he and plaintiff were

13

involved in a welding business; plaintiff registered the trade name "Top of the Line Mobile Welding;" plaintiff lent Ryan Martinez money to buy the welding equipment for the business; and in May of 2011 plaintiff admitted he did welding, but not as a full-time business.  In sum, the undisputed evidence is sufficient to demonstrate there was a welding business of some kind involving plaintiff and Ryan Martinez.  Plaintiff's general denial is insufficient to create a genuine issue of material fact and plaintiff offers no objective evidence to the contrary.  See Thomas v. U.S. Bureau of Prisons, 282 Fed. Appx. 701, 704 (10th Cir. 2008) (holding that conclusory and self-serving statements unsupported by evidence are insufficient to create genuine issue of fact to survive summary judgment); York v. City of Law Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008) (holding that a court may not adopt "blatantly contradicted" version of facts for summary judgment purposes).

Accordingly, viewing the undisputed facts in a light most favorable to plaintiff, the court finds that no reasonable juror could find that plaintiff did not violate the fraud clause as to both the possible identity of the suspect and welding business matters. Having violated the fraud clause, plaintiff is not entitled to recover on his claim.

**IV. Order**

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 45) is **GRANTED**.  Final judgment, pursuant to Fed. R. Civ. P. 54(b), shall enter on all claims brought by plaintiff Joseph Edward Martinez in the Complaint (Docket No. 4), in favor of defendant Hartford Underwriters Insurance, Inc and against plaintiff Joseph Edward Martinez.  It is further

14

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment Re: Statutory Delay (Docket No. 44) is **DENIED AS MOOT**.  It is further

**ORDERED** that defendant Hartford Underwriters Insurance, Inc. is awarded costs to be taxed by the Clerk of the Court.  It is further

**ORDERED** that the Clerk of the Court is directed to close this matter.


Date:  May 15, 2014                            s/ Michael J. Watanabe
         Denver, Colorado                       Michael J. Watanabe
                                                United States Magistrate Judge